# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**JOHN LANKFORD**, personally and on
behalf of all similarly situated persons,

        Plaintiff,

        vs.

**CWL INVESTMENTS, LLC**, d/b/a
Jimmy John's,

        Defendant.

No. 13-cv-14441
Hon. Gerald E. Rosen

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION, GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND, AND DENYING PLAINTIFF'S MOTION TO <u>COMPEL DISCOVERY</u>

## I. INTRODUCTION

In this Fair Labor Standards Act (FLSA) matter, Plaintiff John Lankford claims that his former employer, Defendant CWL Investments d/b/a Jimmy John's, improperly classified him as an exempt employee and is therefore eligible to recover overtime pay under the FLSA. Presently before the Court are three motions. First, Plaintiff requests that this Court conditionally certify a collective action under § 216(b) of the FLSA. Second, Plaintiff seeks leave to amend his Complaint in order to add two limited liability companies as additional defendants. Third, Plaintiff seeks to compel certain discovery. Defendant opposes all three.

1

Having reviewed and considered Plaintiff's Motions and supporting briefs, Defendant's responses thereto, and the entire record of this matter, the Court has determined that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Therefore, the Court will decide this matter "on the briefs." See Eastern District of Michigan Local Rule 7.1(f)(2). The Court's Opinion and Order is set forth below.

## II. PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION

### A.    Pertinent Facts

Plaintiff formerly worked as an assistant manager at two of the twenty-six Jimmy John's franchises owned and operated by Defendant[1] -- one on Baldwin Road in Auburn Hills, Michigan and one on Sashabaw Road in Clarkston, Michigan. (Plf's Compl., Dkt. # 1, at ¶¶ 15-17, 26; Ex. A to Def's Resp., Dkt. # 24-2, at ¶ 4). He worked at the Baldwin Road store from 2011 to 2012. (Plf's Compl., Dkt. # 1, at ¶ 17). Defendant then transferred him to the Sashabaw Road store, where he worked until Defendant terminated his employment on August 13, 2014. (*Id.* at ¶¶ 17, 42).

---

[1] As set forth in more detail with respect to Plaintiff's Motion for Leave to File First Amended Complaint below, the corporate structure at play is quite nuanced as it involves a variety of LLCs to own, operate, and manage the Jimmy John's franchises that are at issue in this litigation.

The gist of Plaintiff's Complaint is straight-forward.  Defendant classified him as an exempt employee under the FLSA, and as a consequence, he was not entitled to overtime compensation.  Plaintiff asserts that he should have been classified as a non-exempt employee and is due over $20,000 in back wages, which represents more than eleven hundred hours of unpaid overtime.  (*Id.* at ¶¶ 28-38).[2] For example, Plaintiff alleges that he spent "at least 80-85%" of his time engaged in non-exempt duties on the food production line: "taking customer orders, preparing sandwiches and other food orders, and serving as cashier."  (*Id.* at ¶¶ 18-19).  Plaintiff additionally asserts that although he was an assistant manager, this position was only a title as he had "no authority to hire or fire employees," "did not set the schedules for other employees," and "had no authority to impose disciplinary measures on other employees."  (*Id.* at ¶¶ 20-22).

Plaintiff seeks to represent other assistant managers in this purported collective action.  (*Id.* at ¶¶ 43-58).  He avers that he "has actual knowledge" that Defendant failed to pay other assistant managers overtime because he "worked at more than one location . . . as an assistant manager and was classified as an exempt employee at all locations" and because he "worked with other assistant managers." (*Id.* at ¶¶ 43-45).  Moreover, it is "a matter of policy for all locations operated by

---

[2] In addition to seeking compensation for this misclassification, Plaintiff also alleges that Defendant terminated his employment after complaining about this misclassification in violation of the FLSA's anti-retaliation provision.  (*Id.* at ¶¶ 40-42, 65-70).

[Defendant that assistant managers] are improperly classified as exempt employees." (*Id.* at ¶¶ 48, 53).

In support of his Motion, Plaintiff primarily attaches two documents that fill in some of these allegations: his own affidavit and Defendant's Employee Policy Guidebook.[3]   First, Plaintiff's affidavit frames his day-to-day tasks around Defendant's policies:

> 13.   During the time that I was an assistant manager my principal work was at the meat slicing station.  I spent nearly all of my work time at the meat slicing station, filling in for another employee at one of the other [sandwich] production stations, or sharing in cleaning duties.  This was the case at both restaurants where I worked, and was based on uniform company policies applicable to all restaurant locations.

> 14.   The tasks for employees, including assistant managers, were spelled out in detail in established CWL policies.  For instance, there were specific cleaning tasks, listed in order or (sic) priority, on sheets provided by CWL for cleaning at lunch time, cleaning at dinner time, and "specialized" cleaning to be performed on specified days of the week.

> 15.   Neither I nor any other assistant manager had the authority to hire, promote, or fire other employees.  These decisions were made at the corporate, not the restaurant, level.

> 16.   As an assistant manager I was occasionally directed to conduct interviews of applicants for employment.  By established CWL policy I was required to ask specified questions -- and only those specified questions -- of an applicant.  I then wrote down

---

[3]  He also attaches various screenshots from Defendant's website that depict Defendant's investment locations, including those in southeast Michigan.  (Exs. 1 & 2 to Plf's Br., Dkt. ## 21-3, 21-4).

the applicant's responses on the general sheet and passed the sheet to the [store's General Manager].

17.  Assistant managers had no authority to determine or impose discipline upon other employees or to reward employees for exceptional work.  We were permitted only to fill out a form listing an employee's violation of established company rules or policies and pass the form along to the [store's General Manager], who would forward the form to the Human Resources department at the company offices for determination of discipline.

18.  Neither I nor any other assistant manager was responsible for establishing work schedules for other employees.  Even when an employee could not report due to illness or other emergency, the assistant manager could merely provide that employee with a list of other employees who were available and eligible to work those hours.  We could only provide the names of employees who, if they worked an additional shift, would not exceed a set number of hours in a week.

(Ex. 3 to Plf's Br., Dkt. # 21-5, at ¶¶ 13-18).

Second, Plaintiff directs this Court to the following policies within Defendant's Employee Policy Guidebook: (1) Area managers -- not assistant managers, managers, or general managers -- may reward employees for "outstanding performance;" (2) All employees must "find [their] own replacement if [they] are not going to be at work;" (3) General managers are "solely responsible for the supervision, contents and operation of the cash register;" and (4) the "Manager work week is a minimum of fifty hours and five shifts," with a "minimum of 10 hours per day."  (Ex. 4 to Plf's Br., Dkt. # 21-6, at 16, 19-21).

5

Plaintiff therefore requests that this Court authorize that notices of this lawsuit be sent to "all current and former persons employed as assistant managers by CWL Investments, LLC throughout Michigan who worked for at least one week in excess of forty hours but were paid only for forty hours from October 23, 2010 to the present." (Ex. 1 to Plf's Mtn., Dkt. # 21-1, at 2). Defendant vigorously objects, attaching declarations by eight current or former assistant managers at various locations denying in some detail that they are not similarly situated to Plaintiff with respect to the work that they perform. (Exs. C-J to Def's Resp., Dkts. ## 24-4 to 24-11). These assistant managers emphasize the supervisory and discretionary nature of their positions, including by: interviewing applicants for positions; training new employees; directing employees to do certain tasks; disciplining employees; managing labor costs by sending employees home; and reviewing employee's performance. (*Id.*). Notably, one of these assistant managers worked at both locations where Plaintiff worked and absolutely disputes Plaintiff's view of an assistant manager's job duties. (Ex. F to Def's Resp., Dkt. # 24-7).[4]

---

[4] Defendant also attaches other materials, including: (1) declarations of employees whom Plaintiff formerly supervised and who dispute Plaintiff's position as to his job responsibilities; (2) documentation that it asserts shows that Plaintiff disciplined employees, managed employee's timesheets, and interviewed applicants; and (3) Plaintiff's job description. (Exs. K-N to Def's Resp., Dkt. ## 24-12 to 12-15, 24-18 to 24-20).

**B.    Applicable Standards**

Section 216(b) of the FLSA permits individuals to sue on "their own behalf and for 'similarly situated' persons." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).  In order to proceed as a "collective action," the plaintiffs must be actually similarly situated and all plaintiffs must affirmatively opt into the litigation.  *Id.* (citing 29 U.S.C. § 216(b) and *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 167-68 (1989)).  This is in contrast to "the opt-out approach utilized in class actions under Fed. R. Civ. P. 23." *Id.*

Though the Sixth Circuit has not expressly decided the procedure under which a district court should utilize to determine whether to certify a collective action under Section 216(b), the near universal approach within this Circuit -- and across the country -- is to employ a "two-phase inquiry." *Id.*  During the first stage, which takes place at the beginning of discovery, a court will typically "conditionally certify" a representative class upon a "modest factual showing" that a class of similarly situated individuals exists. *Id.* at 547 (citation omitted).  Other courts have described this showing as "a fairly lenient standard." *See White v. Baptist Mem. Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012).  Putative class members are then notified of the action and are given the opportunity to "opt-in." *Comer*, 454 F.3d at 546.  Following the close of discovery, a court will turn to the

7

second stage and determine whether the class members are, in fact, similarly situated by way of a decertification motion. *Id.*

Lead plaintiffs "bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009). Neither the FLSA nor the Sixth Circuit defines the term "similarly situated." The Sixth Circuit has, however, endorsed certification decisions made upon a variety of factors, including "the 'factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action.'" *Id.* (citations omitted). It has also held that "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Id.* at 585. But such a "unified policy" is not required to make an adequate similarly situated finding. *Id.* at 584. That is, a collective action may be appropriate when claims are "unified by common theories of . . . statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* at 585.

This instant Motion arrives before this Court in a slightly different procedural posture than most motions for conditional certification. Here, Plaintiff filed his Motion not at the beginning of discovery, but instead a little more than

one and a half months before the close of discovery.  When a plaintiff has been afforded the *opportunity* to conduct discovery, courts typically apply a "heightened" or "more restrictive" -- but not stringent -- standard.  *See, e.g., Wheeler v. City of Detroit*, 2012 WL 1119300, at *3 (E.D. Mich. Apr. 3, 2012) (Borman, J.); *Neff v. U.S. Xpress, Inc.*, 2013 WL 4479078, at *3 (S.D. Ohio Aug. 20, 2013).

Plaintiff argues that this Court should not apply such a standard, noting that Defendant "has refused to provide information regarding other assistant managers in response to [Plaintiff]'s discovery requests, or any other 'significant' information."  (Plf's Reply, Dkt. # 25, at 3-4).  He also argues that he had problems -- due to Defendant's calendar -- scheduling the deposition of Defendant's 30(b)(6) representative, and that Defendant has been tardy in producing documents and identifying individuals with knowledge of Plaintiff's claims.  (*Id.* at 4-6).  Because Defendant "has failed or refused to provide any '*significant*' discovery bearing on the classification, actual job duties or compensation of other assistant managers," Plaintiff posits that this Court should apply the looser standard.  (*Id.*) (emphasis added).

This position is not well-taken.  Defendant responded to Plaintiff's document requests and interrogatories on this issue in January 2014.  (Exs. 1 & 2 to Plf's Reply, Dkt. ## 25-2, 25-3).  Under this Court's Scheduling Order, Plaintiff

was required to file a motion to compel discovery "within 14 days of receipt or notice of such disputed discovery." (Dec. 5, 2013 Scheduling Order, Dkt. # 9, at ¶7A.). Plaintiff's failure to timely challenge Defendant's answers and responses has waived any right he had to object to the same. And though he was not able to depose Defendant's 30(b)(6) representative until recently, this Court need not require "significant" discovery to view Plaintiff's Motion with the heightened standard. It is clear that Plaintiff has conducted some discovery with respect to the certification issue, albeit one that has apparently not been very fruitful for him. *Neff*, 2013 WL 4479078, at *3 ("[W]hen some, but not all, discovery has been undertaken relating to the issue of class certification, a heightened, but not stringent, standard must be applied."). Accordingly, the Court will analyze Plaintiff's Motion under the "heightened" or "more restrictive" standard.[5]

## D.    Discussion

Plaintiff rests his Motion upon his identification of "a single policy . . . which has caused [Defendant] to violate the FLSA by failing to pay overtime compensation to Plaintiff and all Class Members:" Defendant's classification of all assistant managers as exempt employees. (Plf's Br., Dkt. # 21-2, at 13). While cognizant of the fact that courts typically grant such motions, Plaintiff's identification of this policy alone does not set forth a sufficient factual nexus

---

[5] Even were the loose standard to apply, this Court's conclusion regarding conditional certification would be the same.

between this policy and other similarly situated employees.  Courts within this

Circuit and across the country require more than just identifying classification

decisions in order to conditionally certify a collective action:

> As a matter of both sound public policy and basic common sense, the mere classification of a group of employees -- even a large or nationwide group -- as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as "similarly situated" for § 216(b) purposes.  *If it were, in every instance where an employer is accused of misclassifying a large group of employees, the district court would then somehow be required to order collective action notification, irrespective of the quality or quantity of evidence that had been produced in the form of declarations and supporting exhibits.*  Such a rule would run counter to the long established law governing § 216(b) actions, which states that whether an employee has been properly exempted under the FLSA necessitates a fact specific inquiry.

*Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 927 (D. Ariz. 2010) (emphasis added);

*Bearden v. AAA Auto Club S., Inc.*, 2013 WL 1181474, *7 (W.D. Tenn. Mar. 18,

2013) ("It is not enough for the named plaintiffs to assert that [an employer]

'applied a similar classification to all of them.'  Instead, there must be a specific

factual showing, albeit 'modest,' that the theoretical claims of the potential class

members share with the named plaintiffs a common theory that the . . .

classification was improperly applied to them.") (citation omitted).  In particular,

this Court finds recent decisions by Judges Lawson, Edmonds, and Roberts of this

District to be persuasive.  *See Arrington v. Michigan Bell Tel. Co.,* 2011 WL

3319691 (E.D. Mich. Aug. 1, 2011) (Lawson, J.); *Shipes v. Amurcon Corp.*, 2012

11

WL 995362 (E.D. Mich. Mar. 23, 2012) (Roberts, J.); *Swinney v. Amcomm Telecomm., Inc.*, 2013 WL 28063 (E.D. Mich. Jan. 2, 2013) (Edmunds, J.).

In *Arrington*, the plaintiffs similarly argued that their employer improperly classified them as exempt employees and sought conditional certification under Section 216(b). 2011 WL 3319691, at *1-2. In support, they claimed that they were "similarly situated to other First Level Managers because they are all subject to the defendant's FLSA-violating policy of improperly classifying the First Level Managers as exempt from overtime wages under the FLSA." *Id.* at *5. But they supported this claim "with declarations and depositions of the plaintiffs in which the plaintiffs assert only their 'beliefs' that other First Level Managers also are subject to that practice." *Id.* And as here, the defendant attached a variety of affidavits from other First Level Managers "denying that their positions should be exempted under the FLSA and asserting that they are not similarly situated to the plaintiffs with respect to the work they perform." (*Id.* at *5). Judge Lawson found that such "beliefs" were not sufficient to warrant conditional certification: "The plaintiffs' claim of a common violation by the defendant would be sufficient to meet that showing, but the plaintiffs have provided no evidence of common treatment beyond the two experiences of Arrington and Nagy and their beliefs that other First Level Managers are not being compensated for overtime work. Although they include their beliefs . . . in signed declarations, the plaintiffs have

pointed to no evidence at all that could support their argument that other First Level Managers are similarly situated." *Id.* at *6.

*Shipes*, as pertinent here, also involved an allegation of misclassification. 2012 WL 995362, at *9. Judge Roberts similarly held that "it is not enough, even at the notice stage, to allege lead and opt-in plaintiffs are similarly situated simply because of the defendant's common scheme to misclassify them as exempt." *Id.* (citation omitted). Rather, "[a] collective action is only appropriate where the plaintiffs make a modest factual showing that the nature of the work performed by all class members is at least similar to their own." *Id.* at *10. (citation omitted). In finding that plaintiff's support -- by pointing to her classification status and an affidavit attesting that she "kn[e]w of other individuals who regularly worked overtime hours" -- did not warrant conditional certification, Judge Roberts noted that the plaintiff "provide[d] no evidence that other salaried employees performed similar job duties as she. . . . While her affidavit suggests she may have been subjected to FLSA-violating practices, standing alone, this declaration does not establish a right to proceed collectively." *Id.*

Finally, Judge Edmonds in *Swinney* addressed a claim that a cable company misclassified its service technicians as "independent contractors" instead of employees. 2013 WL 28063, at *1, 3. Drawing on *Arrington* and *Shipes*, Judge Edmonds declined to conditionally certify a collective action due to the conclusory

13

nature of the plaintiff's "support" for the identification of similarly situated individuals:

> Just as in *Arrington,* Plaintiff has alleged that Defendant violated the FLSA by failing to pay him overtime. He also alleged a class size of at least fifty. And he finally has alleged that Defendant subjected all of the independent contractors to the same. But, also just as in *Arrington,* Plaintiff has only provided conclusory allegations in support of his affidavit. The Court also points out that Plaintiff has offered only his declaration in support of conditional certification. While, as the court noted in *Arrington,* numbers are not dispositive, they are a factor. But his declaration, as it stands, with no other evidence, is insufficient.

*Id.* at *8 (citation to *Shipes* omitted).

As with the plaintiffs in *Arrington*, *Shipes*, and *Swinney*, Plaintiff has not sufficiently put forth facts to warrant conditional certification. He has no evidence that other assistant managers performed their work as assistant managers in a similar manner. Outside of pointing to Defendant's classification policy, all Plaintiff has put forth is that he "has worked with other assistant managers" and that "[o]ther employees similarly situated to [him] work or have worked for [Defendant], but are or were not paid overtime." (Plf's Compl., Dkt. # 1, at ¶¶ 45-46). This falls short of his burden to show that there are opt-in plaintiffs that are similarly situated to him. *See also O'Neal v. Emery Fed. Credit Union,* 2013 WL 4013167, at *8 (S.D. Ohio Aug. 6, 2013) ("[T]o warrant a finding that similarly situated employees exist, a plaintiff's declaration must at least allege facts sufficient to support an inference that she has *actual knowledge* about other

14

employees['] job duties, pay structures, hours worked, and whether they were paid for overtime hours.") (emphasis in original); *Harriel v. Wal-Mart Stores, Inc.*, 2012 WL 2878078, at *5 (D.N.J. July 13, 2012) ("The fact that Plaintiff alone claims he spent most of his time performing non-managerial tasks, combined with the evidence showing that [his] position is subject to nationwide standards under Defendant's corporate policies, does not require the Court to infer that a significant number of other [alleged similarly situated plaintiffs] would have also deviated from the written job description to spend most of their time performing non-managerial tasks.").

Plaintiff makes no attempt to distinguish this line of cases, which Defendant featured prominently -- amongst others -- in its Response.  Instead, Plaintiff's Reply focuses upon Defendant's argument that "no other class members have yet to indicate a desire to opt in" and its use of the various affidavits by current employees.  (Plf's Reply, Dkt. # 25, at 6-10).  But this Court has neither required such a showing of interest to opt-in nor relied upon the other affidavits to evaluate whether Plaintiff has shown that similarly situated individuals exist.

Accordingly, this Court denies Plaintiff's Motion without prejudice.

## III. PLAINTIFF'S MOTION FOR LEAVE TO AMEND

### A.    Pertinent Facts and Procedural History

Plaintiff commenced this litigation on October 23, 2013, naming only CWL Investments as a Defendant.  (Plf's Compl., Dkt. # 1).  In its Answer, Defendant denied that it "owns and operates" Jimmy John's franchises and that it was Plaintiff's employer.  (Def's Ans., Dkt. # 5, at ¶¶ 2, 7, 12, 16).  Moreover, one of its affirmative defenses expressly pled that "CWL did not employ Plaintiff." (Def's Aff. Def., Dkt. # 5, at ¶ 2).  Nevertheless, Defendant appeared and the parties commenced discovery.

During discovery, one of Plaintiff's Interrogatories asked for information concerning Plaintiff's employment status with Defendant: "Do you contend that Plaintiff was not employed by Defendant, as alleged in paragraph 2 of the Affirmative Defenses you filed in this action?"  (Ex. 2 to Plf's Resp., Dkt. # 32-3, at 5-6).  Defendant answered on January 31, 2014 as follows:

> Defendant states that Plaintiff was employed by CWL-Great Lakes, LLC when he worked at the Auburn Hills store and by CWL-Independence, LLC when he worked at the Clarkston store.  These are separate and distinct legal entities.  Each of these entities have separate employees, separate payroll, and separate employer identification numbers for tax and other purposes.

(*Id.*).  Defendant additionally referenced CWL-Independence, LLC and CWL-Great Lakes, LLC in other interrogatory answers.  (*Id.* at 3, 4).

16

On March 11, 2014, Plaintiff filed the above discussed Motion for Conditional Certification.  (Plf's Mtn., Dkt. # 21).  In a footnote in his Brief, Plaintiff raised -- for the first time to this Court -- the issue of whether Plaintiff has properly identified Defendant as his employer: "[D]iscovery as has been obtained indicates that CWL may operate the restaurants through creation of individual LLCs, with CWL as either the sole or the majority member, and with an officer of CWL as the managing member."  (Plf's Br., Dkt. # 21-2, at 4, n.1).  Defendant did not directly address this issue and instead just noted in its Response that "CWL currently assists in the operation of 26 Jimmy John's . . . under various administrative service agreements between CWL and the companies that own the individual stores. . . . [I]t does not employ store employees."  (Def's Resp., Dkt. # 24, at 11).

While that Motion remained pending, on May 1, 2014, Plaintiff finally deposed Clifford Lunney.[6]  Lunney is Defendant's "President and managing member."  (Ex. A to Def's Resp., Dkt. # 24-2, at ¶ 2).  During his deposition, Lunney clarified the various corporate structures used to operate the Jimmy John's franchises at issue in this litigation:

- Defendant, an LLC, is composed of three members -- two other LLCs (4LI LLC and Sandpoint Investments LLC) and an individual (Andy Elmhurst).  (Ex. 1 to Def's Resp., Dkt. # 32-2, at

---

[6] Plaintiff attributes a lengthy delay in scheduling due to Defendant's calendar. (Plf's Reply, Dkt. # 25, at 5).

17

5).  The majority member, 4LI LLC, has two members -- a trust under Lunney's name and a trust under his wife's name.  (*Id.* at 5-6).

- Defendant manages Jimmy John's franchises pursuant to a separate management agreement with each of the franchises that are at issue in this litigation.  (*Id.* at 6, 8-9, 13).  A separate LLC owns each franchise that Defendant operates.  (*Id.* at 8-9).  Those LLCs employ each of their respective employees.  (*Id.* at 24, 27, 38-39).  For Plaintiff, these separate LLCs were CWL-Great Lakes, LLC. and CWL-Independence, LLC.  Defendant (and now Michigan JJ) handles taxes and payroll for each franchise.  (*Id.* at 27).

- Prior to late 2013 or early 2014, Defendant wholly owned each of these separate LLCs.  (*Id.* at 11-12; Ex. 1 to Plf's Mtn., Dkt. # 28, at ¶ 3).  At that time, Defendant transferred its ownership interests in these separate LLCs to a newly-formed LLC, Michigan JJ, LLC.  (*Id.* at 10-11; Ex. 1 to Plf's Mtn., Dkt. # 28, at ¶ 3).  Michigan JJ, LLC was formed on November 20, 2013 -- two months after Plaintiff's August 13, 2013 termination.  (Ex. 4 to Def's Resp., Dkt. # 32-5).

- Michigan JJ, LLC is composed of the same members as Defendant: 4LI LLC, Sandpoint Investments LLC and Andy Elmhurst.  Each member has the same ownership percentage as they did in Defendant.  (Ex. 1 to Def's Resp., Dkt. # 32-2, at 10).

- Defendant -- through Lunney -- continues to manage each of the respective franchises.  (*Id.* at 16-17).

During Lunney's deposition, Plaintiff's counsel noted that he was going to move to amend Plaintiff's Complaint to add Michigan JJ as a Defendant.  (*Id.* at 12).  He sent Defendant's counsel a copy of the proposed Amended Complaint on May 23, 2014 -- a week before this Court's May 30, 2014 discovery cut-off date.  (Plf's Mtn., Dkt. # 28, at 5).  Defendant's counsel did not substantively respond,

and the discovery cut-off date came and went.  (*Id.* at 5-6).  Two weeks later, on June 13, 2014, Plaintiff finally moved for leave to amend in order to add 4LI, LLC and Michigan JJ, LLC as defendants.  (Plf's Mtn., Dkt. # 28).

Defendant objects to Plaintiff's Proposed First Amended Complaint on two fronts.  First, Defendant argues that it is futile because it does not allege sufficient facts showing that 4LI, LLC and Michigan JJ, LLC were Plaintiff's "employers" under the "economic-realities" test.  (Def's Resp., Dkt. # 32, at 13-18).  Second, Defendant contends that the Proposed First Amended Complaint is prejudicial because Plaintiff filed this Motion *after* discovery cut-off.  (*Id.* at 18-20).  As set forth below, these objections are without merit.

**B.   Applicable Standards**

Under Rule 15, a party may amend a pleading before trial as a matter of course (Fed. R. Civ. P. 15(a)(1)), with the opposing party's written consent (Fed. R. Civ. P. 15(a)(2)), or by leave of the Court.  (*Id.*).  Rule 15(a)(2) makes clear that a "court should freely give leave when justice so requires."  *Id.*  "The decision as to when 'justice requires' an amendment is within the discretion of the trial judge."  *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989) (citation and alteration omitted).

"Although Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to amend a complaint when justice so requires, the right to

amend is not absolute or automatic." *Tucker v. Middleburg-Legacy Place,* 539 F.3d 545, 551 (6th Cir. 2008) (internal quotation and modification omitted). "In deciding whether to allow an amendment, the court should consider the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.,* 246 F.3d 593, 605 (6th Cir. 2001). An amendment is deemed futile if the resulting amended complaint "could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000).

## C.    Discussion

Taking Defendant's arguments in reverse order, the Court finds that amendment will not prejudice the new Defendants in a manner that would support denying Plaintiff's Motion for Leave to File First Amended Complaint. Plaintiff has offered (although barely) an explanation for the delay as he identified scheduling issues with respect to Lunney's deposition and requested Defendant's consent to amend the Complaint prior to discovery cut-off. *Duggins v. Steak N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999). The dispositive motion deadline has not arrived and Defendant has not moved for summary judgment. More importantly, the addition of the new Defendants is really just an addition of paper:

according to Lunney's deposition testimony, the various corporate machinations all point back to him and Plaintiff has already deposed Lunney.  In sum, permitting Plaintiff to add Michigan JJ and 4LI will just require a short period of written discovery as set forth below, which will not be prejudicial.

The Court also finds that Plaintiff's Motion is not futile.  It is apparent to this Court that Michigan JJ could be deemed Defendant's successor, and therefore liable for Defendant's conduct.[7]   "[T]he appropriateness of successor liability depends on whether the imposition of such liability would be equitable."  *Cobb v. Contract Transp., Inc.,* 452 F.3d 543, 554 (6th Cir. 2006).  Courts use a variety of factors to consider successor liability, including:

> (1) whether the successor company has notice of the charge; (2) the ability of the predecessor to provide relief; (3) whether the new employer uses the same plant; (4) whether there has been substantial continuity of business operations; (5) whether the new employer uses the same or substantially same workforce; (6) whether the new employer uses the same or substantially same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether [the defendant] uses the same machinery, equipment and methods of production; and (9) whether [the defendant] produces the same product.

---

[7] Though the Sixth Circuit has not examined successor liability under the FLSA, others "have directly addressed the issue [and] unanimously . . . hold that successor liability can be appropriate in FLSA cases."  *Thompson v. Bruister & Associates, Inc.*, 2013 WL 1099796, at *6 (M.D. Tenn. Mar. 15, 2013) (collecting cases).  The Sixth Circuit has also "recognized successor liability in the employment context." *Id.* at *4-6 (citing *EEOC v. MacMillan Bloedel Containers*, 503 F.2d 1086, 1090-91 (1974)).

21

*Id.*  These are "not in themselves the test for successor liability," but rather "are simply factors courts have considered when applying the three prong balancing approach, considering the defendant's interests, the plaintiff's interests, and federal policy." *Id.*

Here, Plaintiff's Proposed First Amended Complaint makes clear that Defendant has since "conveyed all of its interest in the Jimmy John's franchises to Michigan JJ . . . *with the same members, [and] with the same ownership percentages,* as [Defendant.]"  (Ex. 1 to Plf's Mtn., Dkt. # 28, at ¶ 3) (emphasis added).  In short and as stated previously, the change was one in paper only. Defendant argues that Plaintiff has not addressed the nine-factor test set forth above, but the Sixth Circuit made it clear in *Cobb* that Plaintiff need not do so: "[A]ll nine factors will not be applicable to each case.  Whether a particular factor is relevant depends on the legal obligation at issue in the case.  The ultimate inquiry always remains whether the imposition of the particular legal obligation at issue would be equitable and in keeping with federal policy."  452 F.3d at 554. Plaintiff has pled enough facts to plausibly infer that Michigan JJ is Defendant's successor.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

With regards to 4LI, Plaintiff argues that it is either a joint-employer or constitutes part of a "single integrated enterprise."  As this Court finds that it is plausible that 4LI is a part of a single integrated enterprise, there is no need to

separately examine whether it also constitutes a "joint employer" at this time.

Under the single integrated enterprise (or "single employer") doctrine, the Sixth

Circuit has stated that:

> two companies may be considered so interrelated that they constitute a single employer subject to liability. . . .  In determining whether to treat two entities as a single employer, courts examine the following four factors: (1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control.  None of these factors is conclusive, and all four need not be met in every case.  Nevertheless, control over labor relations is a central concern.

*Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993-94 (6th Cir.

1997) (citing internal citations omitted).

This Court is satisfied that Plaintiff's allegations plausibly allege that 4LI

and Defendant -- as well as the other various corporate machinations -- are just part

one single integrated enterprise.   4LI is Defendant's majority member and

Michigan JJ's majority member.   More importantly, 4LI apparently begins and

ends with Lunney -- the individual who manages (through Defendant) each of the

respective franchises.   These facts are enough for Plaintiff's Proposed First

Amended Complaint to not be futile with respect to 4LI.  *Iqbal*, 556 U.S. at 678;

*Bracken v. DASCO Home Med. Equip., Inc.*, 954 F. Supp. 2d 686, 698-99 (S.D.

Ohio 2013) (it is enough to plead that two entities "have the same business address

and the same statutory agent" to plausibly allege that they "were a single integrated employer that are separated only nominally").

In sum, whether Michigan JJ and 4LI may be liable for Defendant's alleged FLSA violations is a question to be fleshed out during a period of limited discovery. Because discovery has already closed in this matter and given Plaintiff's acknowledgment that he is done deposing Lunney, the Court will therefore permit written discovery only with respect to Plaintiff's claims against 4LI, LLC and Michigan JJ, LLC for a period not to extend thirty days after they appear in this matter.[8]

## IV. PLAINTIFF'S MOTION TO COMPEL

Finally, Plaintiff seeks to compel Defendant to produce certain documents in response to his Second Requests for Production of Documents. (Plf's Mtn., Dkt. # 38). Plaintiff served such discovery on May 23, 2014. (Ex. 1 to Plf's Mtn., Dkt. # 38-1). Defendant responded on June 18, 2014. (Ex. 2 to Plf's Mtn., Dkt. # 38-2). Under this Court's Scheduling Order, "[a]ll motions to compel disputed discovery . . . must be filed within 14 days of receipt or notice of such disputed discovery. . . . The Court will not entertain such motions beyond this time absent some

---

[8] In a footnote in his Reply, Plaintiff for the first time requests that this Court add Lunney as a Defendant. (Plf's Reply, Dkt. # 34, at 4 n. 3). It is well established that parties may not raise new positions in a reply brief. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). If Plaintiff wished to add Lunney, he should have done so pursuant to Federal Rule of Civil Procedure 15(a)(2).

extraordinary showing of good cause." (Dec. 5, 2013 Scheduling Order, Dkt. # 9, at ¶7A.). Fourteen days after June 18, 2014 was July 2, 2014. His July 24, 2014 Motion is therefore untimely and he has not made an extraordinary showing of good cause. His Motion is therefore denied.[9]

## IV. CONCLUSION

For these reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion for Conditional Certification (Dkt. # 21) is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File First Amended Complaint (Dkt. # 28) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Compel Discovery (Dkt. # 38) is DENIED.

IT IS FURTHER ORDERED that Plaintiff may file his First Amended Complaint within seven days after entry of this order.

IT IS FURTHER ORDERED that the parties may engage in written discovery only with respect to Plaintiff's claims against 4LI, LLC and Michigan JJ, LLC for a period not to extend thirty days after they appear in this matter. With

---

[9] The Court recognizes that some of the discovery pertinent to Plaintiff's Motion relates to Defendant's various corporate organizations. Because this Court is narrowly extending the discovery period due to the addition of other Defendants, Plaintiff may serve discovery *consistent with this Opinion*, including this Court's denial of conditional certification.

the exception of the presently scheduled settlement conference with Magistrate Judge Mona K. Majzoub on August 14, 2014, the Court will issue an Amended Scheduling Order adjusting all upcoming dates. This includes the September 15, 2014 dispositive motion cutoff. The Court will not extend any more dates.

**IT IS SO ORDERED.**


Dated:  August 13, 2014                 s/Gerald E. Rosen_____
                                        Chief, Judge, United States District Court


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 13, 2014, by electronic and/or ordinary mail.

                                        s/Julie Owens_____
                                        Case Manager, (313) 234-5135

26